## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE,<br>268 Bush Street #555<br>San Francisco, CA 94104,<br><br>*Plaintiff*,<br><br>vs.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES<br>99 New York Avenue, N.E.<br>Washington, D.C. 20226,<br><br>*Defendant*. | Case No. |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.      Plaintiff Giffords Law Center to Prevent Gun Violence ("Giffords Law Center")[1] brings this action against Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Defendant has failed to respond to two of Plaintiff's requests for records that reveal: (1) whether officials from ATF spoke to, or were otherwise influenced by, individuals affiliated with the Washington gun lobby in the period immediately following the mass shooting in Las Vegas, Nevada on October 1, 2017; and (2) the extent to which the Washington gun lobby's influence has caused ATF to pursue dangerous policies and to oppose common sense gun-violence-prevention measures.

---

[1] Between the time it filed the FOIA requests at issue here and the time it filed this law suit, Plaintiff changed its name from the Law Center to Prevent Gun Violence to Giffords Law Center to Prevent Gun Violence. Plaintiff submitted the FOIA requests at issue in this lawsuit under its previous organizational name, the Law Center to Prevent Gun Violence.

2.     The records Plaintiff seeks are of significant public importance.  The policy choices made by the Trump Administration, as well as its public response to prominent instances of gun violence, mirrors closely, if not exactly, the views and communications strategies preferred and employed by the Washington gun lobby.  It appears that the Administration is coordinating with, or taking direction from, the Washington gun lobby in responding to mass shootings.  Plaintiff brings this action to determine whether, and to what extent, this apparent coordination has been accomplished through communications with officials at ATF.

3.     Defendant has failed to provide substantive responses to Plaintiff's FOIA requests.  Judicial action is therefore necessary to compel compliance with the FOIA and to ensure a timely production of responsive records.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5.     Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e), because Defendant is located in Washington, D.C., and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Washington, D.C.

## PARTIES

6.     Plaintiff Giffords Law Center is a nonprofit unincorporated association operating under section 501(c)(3) of the Internal Revenue Code.  Based in San Francisco, CA, Giffords Law Center also has staff members located in New York, NY, and Washington, D.C.  Plaintiff is one of the nation's leading legal and policy organizations dedicated to finding sensible solutions that will prevent further gun violence.

7.    Defendant is a federal agency within the meaning of the FOIA, 5 U.S.C. §
552(f)(1), and is headquartered in Washington, D.C.  Defendant has possession, custody, and
control of records to which Plaintiff seeks access.

## FACTUAL ALLEGATIONS

8.    On January 20, 2017, President Trump's inauguration day, ATF's then-Associate
Deputy Director Ronald Turk authored an ATF "White Paper" (the "Turk Memo") advocating
for a number of policies that were heavily favored and pushed for by members of the
Washington gun lobby, including by the National Rifle Association (the "NRA").[2]

9.    Among other things, the Turk Memo advocated for rolling back restrictions on
purchasing gun silencers, taking steps toward ending a longstanding ban on assault weapon
imports, and raising the threshold number of guns used in crime that must be traced to a
particular gun dealer before the federal government may require additional information from the
dealer.[3]  After the Turk Memo was made public, the executive director of the NRA's lobbying
arm stated that the NRA "look[ed] forward to working with the new attorney general. . . .  After
eight years of overreach by the Obama administration, it's time to roll back regulations that serve
no legitimate law enforcement purpose."[4]

10.    The Trump Administration has also appeared to move in lockstep with the
Washington gun lobby in terms of its public comments on gun regulation and gun violence,
particularly in the wake of mass shootings.  This alignment was readily apparent in the wake of
the deadliest mass shooting in modern American history on October 1, 2017 in Las Vegas,

---

[2] Sari Horwitz, *Senior ATF Official Proposes Loosening Gun Regulations*, Wash. Post (Feb. 6, 2017),
https://www.washingtonpost.com/world/national-security/senior-atf-official-proposes-loosening-gun-
regulations/2017/02/06/beeb1120-ec7c-11e6-9662-6eedf1627882_story.html?utm_term=.7769564c1abf.
[3] *Id.*
[4] *Id.*

Nevada and, more recently, after the November 5, 2017 mass shooting in Sutherland Springs,

Texas that claimed the lives of more than two dozen parishioners in a small-town church.

11.     While the NRA issued no public statement in the immediate aftermath of the Las

Vegas shooting, Dana Loesch, a spokeswoman affiliated with the lobbyist group, called for

"prayer" and a tempering of calls for a policy response.[5]  The NRA's official response to the Las

Vegas tragedy, issued on October 5, 2017 likewise rejected calls for discussion of policy

solutions that could reduce gun violence, and instead urged Congress to pass dangerous

concealed carry "reciprocity" legislation that would put law enforcement at risk and allow

dangerous people to carry guns nationwide without regard for the laws of the states they are in.[6]

12.     The Administration read from the same playbook.  President Trump offered his

"condolences" and "sympathies" in the wake of the shooting, but did not address the pressing

need to strengthen the nation's gun laws.[7]  Similarly, when the White House was asked to

address calls for common sense gun reform, White House Press Secretary Sarah Huckabee

Sanders refused, saying now was not the time for such a conversation.[8]  White House talking

points similarly asserted that it was too soon to engage in a policy discussion on gun violence.

They further asserted that cities like Baltimore and Chicago "show[] that more gun laws on the

books may not work,"[9] a common Washington gun lobby talking point that ignores the reality

---

[5] Dana Loesch (@DLoesch), Twitter (Oct. 2, 2017, 8:25 AM),
https://twitter.com/DLoesch/status/914828794640420864.
[6] Chris Cox (@ChrisCoxNRA), Twitter (Oct. 5, 2017, 3:02 PM),
https://twitter.com/ChrisCoxNRA/status/916015643664646144.
[7] Donald J. Trump (@realDonaldTrump), Twitter (Oct. 2, 2017, 7:11 AM),
https://twitter.com/realDonaldTrump/status/914810093874671617.
[8] Callum Borchers, *White House: Now Is Not the Time to Talk about Gun Control. But 'If You Look to Chicago ...'*,
Wash. Post (Oct. 2, 2017), https://www.washingtonpost.com/news/the-fix/wp/2017/10/02/white-house-now-is-
not-the-time-to-talk-about-gun-control-but-if-you-look-to-chicago/?utm_term=.43b4c55d1a3b.
[9] NBC Politics (@NBCPolitics), Twitter (Oct. 3, 2017, 4:48 PM),
https://twitter.com/nbcpolitics/status/915317663789928448.

that guns trafficked from elsewhere are nevertheless responsible for the vast majority of gun deaths in those cities.[10]

13.     When it came to the devices used to enhance the lethality of the weaponry used by the Las Vegas shooter, the Administration again toed the NRA line.  The NRA's statement on the Las Vegas shooting suggested that the organization was open to having ATF "review" the regulation of the devices, so-called bump stocks, that allow semi-automatic rifles to function like fully-automatic rifles.[11]  Shortly after the release of the NRA's statement, the White House shifted its position to align with that of the NRA.  In response to a question about the NRA's statement on bump stocks, Sarah Huckabee Sanders responded that "it's something we're very open to."[12]  Sanders stated, "We know that members of both parties and multiple organizations are planning to take a look at bump stocks and related devices [and] [w]e certainly welcome that. We'd like to be part of that conversation."[13]

14.     Within two weeks of the Las Vegas shooting, the NRA's line on bump stocks hardened, and the organization made clear it opposes any Congressional action on the devices.[14] To date, no action has been taken by the Trump Administration to regulate the sale of bump stocks.

---

[10] Jeremy Berke, *50 Maps That Show How Guns Are Trafficked into Every State*, Business Insider (Jan. 24, 2016), http://www.businessinsider.com/atf-maps-show-state-gun-trafficking-2015-11/#the-atf-traced-5891-firearms-in-alabama-in-2014-the-vast-majority-3579-were-pistols-and-linked-to-possession-of-weapon-and-firearm-under-investigation-charges-1; *see also* Shelby Bremer, *Majority of Guns Used in Chicago Crimes Come from Outside Illinois: Report*, NBC 5 Chicago (Oct. 30, 2017), https://www.nbcchicago.com/blogs/ward-room/chicago-gun-trace-report-2017-454016983.html.
[11] *Id.*
[12] Noah Bierman, *Trump Administration 'Open' to Debate on Banning Bump Stocks*, L.A. Times (Oct. 5, 2017), http://www.latimes.com/politics/washington/la-na-pol-essential-washington-updates-trump-administration-open-to-debate-1507232723-htmlstory.html.
[13] *Id.*
[14] Lauren Fox, *NRA Opposes Bump Fire Stocks Bills in Congress*, CNN (Oct. 13, 2017), http://www.cnn.com/2017/10/12/politics/nra-opposes-bump-stock-bills/index.html.

15.     The responses of the NRA and Administration to the Sutherland Springs shooting played out, similarly, in parallel.  After the execution-style killings of 26 parishioners at a worship service, President Trump suggested it was too soon to discuss any changes to gun policy, that the shooting was not a "guns situation," and that the incident "would have been much worse" if an armed bystander who intervened after the shooter had exited the church where the massacre took place had not done so.[15]  Days later, the President repeated the same themes in a response to a reporter's questions, suggesting the Sutherland Springs shooting was a "situation that probably shouldn't be discussed too much right now," that the country should "let a little time go by," and that there would have been "hundreds more dead" had a neighbor not arrived on the scene and returned fire at the shooter.[16]  The President's comments, again, closely tracked the NRA's oft-repeated narrative after the shooting that a good guy with a gun, trained by the NRA, was the hero who stopped the carnage at Sutherland Springs.[17]

16.     As set forth in greater detail below, Plaintiff submitted two separate FOIA requests to ATF on October 10, 2017, both of which sought records that would reveal the extent to which the Washington gun lobby has sought to influence Defendant's carrying out of its official duties—and the Administration's broader public discussion of gun violence—through communications with officials at ATF.

---

[15] Katherine Faulders & Jordyn Phelps, *Trump Says Texas Church Mass Shooting Not a 'Guns Situation,' Blames Mental Health*, ABC News (Nov. 6, 2017), http://abcnews.go.com/Politics/trump-calls-texas-church-shooting-act-evil/story?id=50950818.

[16] Ian Schwartz, *Trump vs. Reporter: Gun Control "Would Have Made No Difference," Hundreds More Would Be Dead*, RealClearPolitics (Nov. 7, 2017), https://www.realclearpolitics.com/video/2017/11/07/trump_to_reporter_gun_control_would_have_made_no_difference_hundreds_more_would_be_dead.html.

[17] Ellie Silverman, *When a Bystander Fired on the Texas Church Shooter, the NRA Found Its Hero*, Wash. Post (Nov. 8, 2017), https://www.washingtonpost.com/news/post-nation/wp/2017/11/08/when-a-bystander-fired-on-the-texas-church-shooter-the-nra-found-its-hero/?utm_term=.be144d2b4eda.

17.     ATF has failed to meet its statutory obligations with respect to each FOIA

request.

Plaintiff's First FOIA Request

18.     To understand, and explain to the public, the extent to which individuals affiliated

with the Washington gun lobby affected the statements and the action of Administration officials

by speaking with, consulting, engaging with, or otherwise attempting to influence officials at

ATF in the period immediately following the mass shooting in Las Vegas, Nevada, Plaintiff

requested that ATF produce the following within twenty (20) business days (the "First FOIA

Request"):

    a.      All records sent or received containing any of the following terms: NRA,
NRA-ILA, national rifle association, rifle association, nra.org, nraila.org, Pete
Brownell, Wayne LaPierre, Josh Powell, Chris Cox, Richard Childress, Carolyn
Meadows, Wilson Phillips, John Frazer, Dana Loesch, Steve Sanetti, Larry
Keane, the National Shooting Sports Foundation, NSSF, Gun Owners of America,
gun lobby, silencer, suppressor, bump stock, CCR, reciprocity, SHARE Act,
National Firearms Act, NFA, or derivations thereof. Please search the Office of
the Director, Office of the Deputy Director, and the Office of the Chief of Staff
for these terms.

    b.      All records sent or received containing any of the following terms: NRA,
NRA-ILA, national rifle association, rifle association, nra.org, nraila.org, Pete
Brownell, Wayne LaPierre, Josh Powell, Chris Cox, Richard Childress, Carolyn
Meadows, Wilson Phillips, John Frazer, Dana Loesch, Steve Sanetti, Larry
Keane, the National Shooting Sports Foundation, NSSF, Gun Owners of America,
gun lobby, silencer, suppressor, bump stock, CCR, reciprocity, SHARE Act, Las
Vegas, Vegas, Mandalay Bay, shooting, Harvest Festival, Stephen Paddock, or
derivations thereof. Please search the Office of Public and Governmental Affairs
for these terms.

    c.      All communications, and calendar invitations sent from or received by
Thomas E. Brandon, or Ronald B. Turk.

    d.      Any and all records that refer or relate to the development of the White
House talking points on the Las Vegas mass shooting, which were made public
through NBC news reporting on October 3. This includes, but is not limited to, all
drafts of the statement and communications regarding its content.

7

e.      Any and all records that refer or relate to the NRA statement on the Las
Vegas mass shooting that was made public on October 5. This includes, but is not
limited to, all records containing a copy of the statement or excerpts thereof, and
any communications regarding its content.

19.     Plaintiff requested that the search for the First FOIA request use the time period

October 1, 2017 to October 8, 2017.

20.     Plaintiff sought a waiver of search and duplicating fees under 5 U.S.C. §

552(a)(4)(A)(iii), which requires waiver of fees if the disclosure is "in the public interest because

it is likely to contribute significantly to public understanding of the operations or activities of the

government and is not primarily in the commercial interest of the requester."

21.     On November 1, 2017, Defendant acknowledged receipt of Plaintiff's request in a

letter.  Defendant assigned Plaintiff's request an internal reference number of 2018-0118be.

Defendant also granted Plaintiff's request for a waiver of search and duplicating fees.

22.     On November 7, 2017, Plaintiff received an automatic electronic response from

Defendant indicating that the request was still under agency review.  The automatic response

provided no substantive response.

23.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), Defendant was required to determine

whether to comply with the FOIA request within twenty business days of receipt of the request

and to notify plaintiff immediately of its determination, the reasons therefor, and the right to

appeal any adverse determination.

24.     Defendant's initial determinations regarding Plaintiff's First FOIA Request were

due by November 8, 2017.

25.     As of filing this Complaint, Plaintiff has received no additional communications

from Defendant regarding the First FOIA Request.

<u>Plaintiff's Second FOIA Request</u>

26.     In an effort to understand, and explain to the public, the extent to which the

Washington gun lobby caused ATF to pursue dangerous policies or otherwise influenced the

policy and communications decisions of Trump Administration and post-election transition team

by speaking with, consulting, or engaging with ATF officials, Giffords Law Center requested

that ATF produce the following within twenty (20) business days (the "Second FOIA Request"):

     a.     All records sent or received by Thomas E. Brandon or Ronald B. Turk containing any of the following terms: DJT, DJT Jr., NRA, NRA-ILA, national rifle association, rifle association, nra.org, nraila.org, Pete Brownell, Wayne LaPierre, Josh Powell, Chris Cox, Richard Childress, Carolyn Meadows, Wilson Phillips, John Frazer, Dana Loesch, Steve Sanetti, Larry Keane, National Shooting Sports Foundation, NSSF, Gun Owners of America, gun lobby, silencer, suppressor, bump stock, CCR, reciprocity, SHARE Act, National Firearms Act, NFA, or derivations thereof.

     b.     All records, including but not limited to calendar records revealing meetings, in person or otherwise, between: (i) Thomas E. Brandon or Ronald B. Turk; and (ii) Pete Brownell, Wayne LaPierre, Josh Powell, Chris Cox, Richard Childress, Carolyn Meadows, Wilson Phillips, John Frazer, Dana Loesch, Steve Sanetti, Larry Keane, or other representatives of the NRA, the NRA-ILA, the National Shooting Sports Foundation, Gun Owners of America, or derivations thereof.

     c.     A copy of all iterations and versions of the Turk Memo.

     d.     All emails on a thread in which the Turk Memo was referenced, attached, or pasted in significant part (more than 20 words).

     e.     All communications and attachments containing the terms: (i) NRA, NRA-ILA, national rifle association, rifle association, nra.org, nraila.org, gun lobby, National Shooting Sports Foundation, NSSF, Gun Owners of America; and (ii) concealed carry reciprocity, CCR, reciprocity, silencer, suppressor, bump stock, Trump, DJT, DJT Jr., SHARE Act, National Firearms Act, NFA, or derivations thereof.

27.     Plaintiff limited the scope of its requested search to records sent or received by

the ATF Office of the Director, Office of the Chief of Staff, Office of the Deputy Director, or the

Office of Public and Governmental Affairs.

28.     The requested time period for Plaintiff's Second FOIA Request was from November 9, 2016 to the date on which the request is processed.

29.     Plaintiff sought a waiver of search and duplicating fees under 5 U.S.C. § 552(a)(4)(A)(iii), which requires waiver of fees if the disclosure is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."

30.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), Defendant was required to determine whether to comply with the Second FOIA Request within twenty business days of receipt of the request and to notify plaintiff immediately of its determination, the reasons therefor, and the right to appeal any adverse determination.

31.     Defendant's initial determinations regarding Plaintiff's FOIA request were due by November 8, 2017.

32.     On November 7, 2017, Plaintiff received an automatic electronic response from Defendant indicating that the request was still under agency review.  The automatic response provided no additional substantive information.

33.     As of filing this Complaint, Plaintiff has received no additional communications from Defendant regarding the Second FOIA Request.

34.     As of the date of this complaint, and with respect to both the Plaintiff's First FOIA Request and Second FOIA Request, Defendant has failed to: (1) determine whether to comply with the FOIA request, (2) notify plaintiff of any such determination of the reasons therefor, (3) advise plaintiff of the right to appeal any adverse determination, or (4) produce the requested records or otherwise demonstrate that the requested records are exempt from production.

35.     Because Defendant has failed to comply with the time limit set forth in 5 U.S.C. § 552(a)(6)(A)(i), or extend the time limit by written notice as set forth in 5 U.S.C. § 552(a)(6)(B)(i), Plaintiff is deemed to have exhausted any and all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

## CLAIM FOR RELIEF

36.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

37.     By failing to respond to Plaintiff's request within the statutorily mandated twenty days, Defendant has violated its duties under 5 U.S.C. § 552, including, but not limited to, the duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt information, and to not withhold responsive records.

WHEREFORE, Plaintiff prays that this Court:

1.     Order Defendant to conduct a search for any and all records responsive to Plaintiff's FOIA requests using search methods reasonably likely to lead to discovery of all responsive records;

2.     Order Defendant to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption for each FOIA request;

3.     Enjoin Defendant from continuing to withhold any and all non-exempt responsive records;

4.     Order Defendant to grant Plaintiff's request for a fee waiver for its Second FOIA Request;

5.      Award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

6.      Grant any other relief this Court deems appropriate.


Dated: November 9, 2017                              Respectfully submitted,

                                                     /s/ *Javier M. Guzman*
                                                     Javier M. Guzman (D.C. Bar No. 462679)
                                                     Robin F. Thurston (*pro hac vice motion to be filed*)*
                                                     Democracy Forward Foundation
                                                     P.O. Box 34553
                                                     Washington, DC 20043
                                                     (202) 448-9090
                                                     jguzman@democracyforward.org
                                                     rthurston@democracyforward.org

                                                     *Admitted in the State of Illinois; practicing under the supervision of members of the D.C. Bar while D.C. Bar application is pending.

                                                     J. Adam Skaggs
                                                     (*pro hac vice motion to be filed*)
                                                     Giffords Law Center to Prevent Gun Violence
                                                     223 West 38th St. # 90
                                                     New York, NY 10018
                                                     (917) 680-3473
                                                     askaggs@giffords.org